Case 1:04-cv-00107   Document 21   Filed in TXSD on 11/04/2004   Page 1 of 16

United States District Court
Southern District of Texas
FILED

NOV 0 4 2004

Michael N. Milby, Clerk

CAUSE NO. **7:03-CR -01010**

| | | |
|---|---|---|
| EX PARTE | § | IN THE _____ DISTRICT COURT |
| | § | |
| | § | FOR HILDAGO COUNTY, TEXAS |

**TO THE HONORABLE JUDGE OF SAID COURT:**
**APPLICATION FOR THE**
**EXTRAORDINARY WRIT OF HABEAS CORPUS**

Reyned O. Aponte, RELATOR, hereinafter Aponte or Relator, files this Application for the **EXTRAORDINARY WRIT OF HABEAS CORPUS** and here proceeds to secure the release of your applicant, Carlos J. Hinojosa, hereinafter Applicant or Hinojosa, who is presently retained in his liberty as the result of the issuance of **"GRAND JURY INDICTMENT"**, the same being issued by the Magistrate Calvin Botley of the United States Southern District Court of Texas, McAllen Division **Cause No. 7:03-CR-01010,** the same being issued on or about 3/9/2004. Relator will show that the Applicant is entitled to Habeas Corpus relief and that the Judgment of Contempt and Order of Commitment are VOID for the following reasons:

## I.
## JURISDICTION

1.   As jurisdictional authority for this application for the Extraordinary Writ of Habeas Corpus, your Relator relies upon the Constitution and laws of the United States of America, especially the Federal Bill of Rights; the Constitution and laws of the State of Texas, especially the Bill of rights as stated in Article I thereof; the ancient common law respecting Writs of Habeas Corpus; the Texas Code of Criminal Procedure, hereinafter TCCP, at Chapter 11, respecting Habeas Corpus, especially Articles 11.01, 11.02, 11.03, 11.04, 11.05 and 11.15; and Article 1.051, respecting Hinojosa's Right to the Assistance of Counsel. Collectively, these statutes are binding on this court and, inter alia, provide that:

> "The writ of habeas corpus is the remedy to be used when any persons is restrained in his liberty." See TCCP, Art. 11.01 and

> "The Court of Criminal Appeals, the District Courts, the County Courts, or any judge of said Courts, have the power to issue the writ of habeas corpus; and <u>it is their duty, upon proper motion, to grant the writ under the rules prescribed for law</u>." TCCP Art. 11.05, and

> "The writ of habeas corpus <u>shall be granted without delay by the judge or court receiving the petition</u>, unless it be manifest from the petition itself, or some document annexed to it, that the party is entitled to no relief whatever." [Emphasis added]

## II.
## RELATOR AUTHORIZED TO PETITION FOR RELIEF

2.  Relator has signed the instant Application and has caused the same to be lodged with the Clerk of this Court in contemplation of this Court granting Relator's Request for Leave to File this Application, which is being submitted with the Application. Further, Relator seeks to hereby present this petition to this Honorable Court pursuant to the authority of Art. 11.12 and 11.13 of the TCCP that state, to wit:

> "Either the party for whose relief the writ is asked, or <u>any person</u> for him, may present a petition to the proper authority for the purpose of obtaining relief." Art. 11.12, and

> "The word applicant, as used in this Chapter[11], refers to the person for whose relief the writ is asked, <u>though the petition may be signed and presented by any other person</u>." Art. 11.13 [Emphasis added]

3.  For example, in *Lehmann v. Lehmann*, 537 S.W.2d 131 (Civ. App. – Ft. Worth), May 7, 1976, the court upheld and acknowledged the statutory and common law right of presentation by Relator, to wit:

> "In proceedings on habeas corpus the applicant for the writ is the person for whom relief is sought by reason of his being illegally confined or restrained within the district or county, and **it is of no importance that the petition for the writ is signed and presented by some other persons**." Lehmann @ 132, citing 27 tex. Jur.2d, p 723, "Habeas Corpus, Sec. 46: In general, Who may apply."
> [Emphasis added]

4. Further, your relator calls the attention of this Court to the Authority of <u>Ex Parte Williams</u>, 630 S.W.2D 803, 804 (Tex. App. San Antonia – 1982) which, in pertinent part, states that:

> "We hold that to deny [a] hearing...constitutes an arbitrary and unreasonable action, as does the denial of habeas corpus relief without a hearing." Id. Williams, supra @ 804.

## III.
## RELATOR'S REQUEST FOR CONSIDERATION

5. Relator requests the consideration of this Court as to Relator proceeding within his own proper person without aid of counsel pursuant to the rule of law established in <u>Hughes v. Rowe</u>, 449 U.S. 5, 9; 101 S.CT. 173, 176.

## IV.

## APPLICANT IS IN ACTUAL CUSTODY

6. Applicant's liberties are currently restrained by reason of his presently being in the actual custody of the Warden Albert Bravo of East Hildago Detention Ctr of Hildago County, Texas and is presently physically in the Hildago Detention Ctr in Hildago County, Texas located at 1300 E Highway 107, La Villa, TX 78562. This arrest and detention is the result of a federal warrant that was issued for allegations of various US Code infractions of the United States Southern District Court for Texas, McAllen Division. The Applicant was advised by mail that an arrest and detention order and warrant of arrest were to be issued, but he has never received a copy of either document, so no copy can be attached hereto.

## V.
## BACKGROUND

7.  Hinojosa, at all times relevant to this incident, was and is a man on the soil of Texas, who was indicted by a UNITED STATES OF AMERICA grand jury, along with Francisco R. Loya, et al, for incidents relating to the sale of an investment fund.

During that trial, Applicant objected to the proceedings on the grounds that the court had no jurisdiction in the matter as (1) none of the actions alleged were alleged to have occurred on federal property, see Article I, § 8, Cl 17 of the Constitution of the United States of America, hereinafter CUSA and *Adams v. United States,* , 319 U.S. 312, 313 (1943) and (2) that the provisions of Title 26 of the United Stated Code, hereinafter USC, did not apply to him or his clients because of the provisions of Article I, § 8, Cl 17 CUSA.

Hinojosa is being held without bond since March 9, 2004 he has also been denied a speedy trial. The reason given for this dishonor by the court is he has been deemed a flight risk.

## VI.
## APPLICATION FOR THE
## EXTRAORDINARY WRIT OF HABEAS CORPUS

8.  Relator, on this application for Extraordinary Writ of Habeas Corpus, requests of this Court that this Application be in all things granted and further requests this Honorable Court to issue the Extraordinary Writ of Habeas Corpus directed to the Warden Albert Bravo of East Hildago Detention Ctr of Hildago County, Texas and/or any other person into whose custody, actual or constructive, your Applicant has been or may be remanded, to produce the person and body of your Applicant in and before this Honorable Court at a date and time certain, in a manner consistent with the Rule of Law established by Art. 11.31 etc., of Chapter 11 of the TCCP, so that

a statutorily sufficient adjudicatory hearing may be held to determine the propriety, if any there be, for the restraint upon the person and liberty of the Applicant.

9. Upon information and belief, the Applicant is presently under a felony indictment but owns property and is established in Mercedes, Texas. Hinojosa has no way to earn a living or functions outside of Texas; therefore he is not a flight risk.

10. In strict compliance with the requisites of an Application for the Extraordinary Writ of Habeas Corpus as set forth in Art. 11.14 of the TCCP pertaining to the requisites of a Writ of Habeas Corpus, your Relator hereby states:

a. That this Application for the Extraordinary Writ of Habeas Corpus, after being signed by Relator and then lodged with the Clerk of this Court, pending a judicial grant of leave to file, and upon presentation by Relator, Relator represents that this Application is being made on behalf of Applicant, who is presently illegally restrained of his liberty and is presently in the actual custody of the Warden Bravo of East Hildago Detention Ctr of Hildago County, Texas, and;

b. That Applicant is being restrained of his liberty by virtue of a warrant issued for alleged infractions by the judge of the United States Southern District Court of Texas. Applicant has not been given a copy of that warrant, so no copy can be exhibited and attached hereto, and;

c. That this Application contains a prayer for relief as stated below, and

d. That this Application is verified by the oath of the Relator herein, Reyned O. Aponte, to the effect that the allegations of this Application are true according to the belief or Relator.

## VII.
### SPECIFIC ERRORS IN JUDICIAL PROCEDURES WHICH HAVE RESULTED IN THE ILLEGAL RESTRAINT OF LIBERTY

### ERROR ONE

APPLICANT'S CONSTITUTIONAL RIGHTS WERE VIOLATED BY A DENIAL OF HIS DUE PROCESS RIGHTS IN THAT THE TRIAL COURT ACTED WITHOUT THE ATTACHMENT OF IN REM JURISDICTION.

11. Article I, § 8, Cl 17 of the Constitution of the United States of America, hereinafter CUSA, specifies exactly where the Congress of the United States of America shall have jurisdiction to legislate.

> "The Congress shall have the power [Clause 1]...To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings;..."

12. Clearly, any legislation enacted by Congress is effective *only* in those places specifically mentioned in that clause. Federal courts, therefore, have jurisdiction over acts committed or omitted on federal lands that have been ceded to the federal government by the state(s), and which have been *accepted by* the federal government, and for which a letter of acceptance has been delivered to the governor of the state(s) ceding such land acknowledging acceptance of such lands. See 40 U.S.C. 255

13. It is not "what" is done that is relevant, but "where" the act takes place. For the United States District Court to have jurisdiction over the matter, any acts alleged to have been committed or omitted would have had to be committed or omitted on land that is described in 40 U.S.C. 255

14. An excellent case is support of this premise is *Adams v. United States*, 319 US 312, 313. In this case, three men, all soldiers, were charge with raping a civilian woman on a military base in Louisiana. The men were convicted in federal district court, and they appealed that conviction to

the Fifth Circuit Court of Appeals in New Orleans. That court saw a possible jurisdictional problem, and asked the Supreme Court of the Unite States for a ruling on two questions:

> "1. Is the effect of the Act of Oct. 9, 1940, above quoted, to provide that, as to lands within a State thereafter acquired by the United States, no jurisdiction exists in the United States to enforce the criminal laws embraced in United States Code, Title 18, Chapter 11, and especially Section 457 relating to rape, by virtue of Section 451, Third, as amended June 11, 1940, unless and until a consent to accept jurisdiction over such lands is filed in behalf of the United States as provided in said Act?"

and

> "2. Had the District Court of the Western District of Louisiana jurisdiction, on the facts above set out, to try and sentence the appellants for the offense of rape committed within the bounds of Camp Claiborne on May 10, 1942?"

15. The Supreme Court ruled that not only did the state have to cede the land, but that the federal government had to acknowledge acceptance of the land by written letter to the governor of the State ceding the land and that, without that acceptance, the federal government had no jurisdiction on the land.

> "Since the government had not accepted jurisdiction in the manner required by the Act, the federal court had no jurisdiction of this proceeding. In this view it is immaterial that Louisiana statutes authorized the government to take jurisdiction, since at the critical time the jurisdiction had not been taken." *Adams*, supra @ 315.

15. The federal prosecutor in that case never attempted to show that any of Applicant's acts or omissions occurred on any lands for which the federal government had exclusive or concurrent jurisdiction.

16. Additionally, Applicant moved to dismiss the suit for lack of jurisdiction. See Motion to Dismiss attached hereto as Exhibit A.

## ERROR TWO

APPLICANT'S CONSTITUTIONAL RIGHTS WERE VIOLATED BECAUSE HE WAS NOT TRIED IN A COURT CREATED PURSUANT TO ARTICLE III OF THE CUSA.

17. The federal court system is created by Article III of the CUSA "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to tome ordain and establish..."

18. Your Appellant is a sovereign citizen of the State of Texas, one of the several States united comprising the United States of America, not to be confused with the United States, a federal corporation. As such, Applicant has a right in any civil or criminal proceeding to have that proceeding heard before a court that has been created pursuant to Article III of the CUSA.

19. The United States Southern District Court of Texas, McAllen Division is not such a court. See 28 USC 124 for Texas. Aponte has pasted the "Notes" from this section here for your review.

```
                        -SOURCE-
(June 25, 1948, ch. 646, 62 Stat. 891; Feb. 10, 1954, ch. 6, Sec.
2(b)(9)(a), (b), 68 Stat. 11; Pub. L. 85-298, Sec. 1, 2, Sept. 4,
1957, 71 Stat. 618; Pub. L. 87-352, Oct. 4, 1961, 75 Stat. 772;
Pub. L. 88-282, Mar. 11, 1964, 78 Stat. 163; Pub. L. 88-512, Aug.
30, 1964, 78 Stat. 695; Pub. L. 90-216, Dec. 18, 1967, 81 Stat.
661; Pub. L. 96-462, Sec. 6, Oct. 15, 1980, 94 Stat. 2054; Pub. L.
98-620, title IV, Sec. 407(a), Nov. 8, 1984, 98 Stat. 3362.)
                        -MISC1-
                 HISTORICAL AND REVISION NOTES
  Based on title 28, U.S.C., 1940 ed., Sec. 189 (Mar. 3, 1911, ch.
231, Sec. 108, 36 Stat. 1125; May 29, 1912, ch. 144, 37 Stat. 120;
Feb. 5, 1913, ch. 28, Sec. 1, 2, 37 Stat. 663; Feb. 26, 1917, ch.
122, 39 Stat. 939; Mar. 1, 1919, ch. 87, 40 Stat. 1270; Mar. 2,
1923, ch. 172, Sec. 1, 2, 42 Stat. 1373; Apr. 3, 1924, ch. 82, 43
Stat. 64; May 29, 1924, ch. 211, Sec. 1, 2, 43 Stat. 244; May 26,
1928, ch. 752, Sec. 1, 45 Stat. 747; June 6, 1930, ch. 408, 46
Stat. 521; June 24, 1930, ch. 596, 46 Stat. 807; Feb. 20, 1932, ch.
51, 47 Stat. 52; July 25, 1939, ch. 356, Sec. 1, 53 Stat. 1082;
June 6, 1940, ch. 252, 54 Stat. 241.)
  Words ''and all prosecutions against persons for offenses
committed in the county of Reagan shall be tried in the court at
San Angelo: Provided, That no civil or criminal cause begun and
pending prior to May 29, 1924, shall be in any way affected,''
words ''and all prosecutions against persons for offenses committed
in the county of Pecos shall be tried in the district court at El
Paso, or Pecos City: Provided, That no civil or criminal cause
begun and pending prior to March 2, 1923, shall be in any way
affected,'' and words ''Provided, That no civil or criminal cause
commenced prior to June 24, 1930, shall be in any way affected,''
were all deleted as superseded by Federal Rules of Criminal
Procedure, Rules 18-22, and as obsolete, in view of the lapse of
```

time after the dates included in such provisions.
   Provisions for furnishing rooms and accommodations at Pecos and Wichita Falls were omitted as obsolete, on advice of the Director of the Administrative Office of the United States Courts that Federal accommodations are now available at such places.
   Provisions relating to the maintenance of offices at various cities by the clerks were omitted as covered by sections 452 and 751 of this title.
   Provisions that process against residents of Pecos County shall issue from and be returnable to the court at Pecos City and against residents of Reagan County at San Angelo, were omitted since such matter can be regulated more appropriately by court rule or order. (See Rule 4 of Federal Rules of Civil Procedure.)
   The provisions requiring notice to be given for time of holding court in Pecos division and at Corpus Christi, were omitted as covered by section 141 of this title.
   Five counties included in this section were created since the enactment of section 189 of title 28. These were Kleberg County and Kenedy County of the Corpus Christi division of the southern district, Culberson County and Hudspeth County of the El Paso division of the western district, and Real County of the San Antonio division of the western district. Pecos County is included in the Pecos division and omitted from the El Paso division of the western district to conform to the practice of the court.
   Changes in arrangement and phraseology were made.

### AMENDMENTS

   1984 - Subsec. (b). Pub. L. 98-620, Sec. 407(a)(1), substituted ''seven'' for ''six'' in provisions preceding par. (1).
   Subsec. (b)(4). Pub. L. 98-620, Sec. 407(a)(2), struck out references to Hidalgo and Starr counties from the counties comprising the Brownsville Division of the Southern District.
   Subsec. (b)(7). Pub. L. 98-620, Sec. 407(a)(3), added par. (7).
   1980 - Subsec. (b)(2). Pub. L. 96-462, Sec. 6(a), struck out references to Polk and Trinity counties in list of counties comprising Houston Division of Southern District.
   Subsec. (c). Pub. L. 96-462, Sec. 6(b), in provisions preceding par. (1) substituted ''seven'' for ''six''; in par. (1) struck out references to Angelina, Houston, Nacogdoches, and Shelby counties in list of counties comprising Tyler Division of Eastern District; in par. (2) struck out references to Sabine, San Augustine, and Tyler counties in list of counties comprising Beaumont Division of Eastern District; and added par. (7).
   1967 - Subsec. (d). Pub. L. 90-216, Sec. 1(4), enlarged from six to seven the number of divisions comprising Western District.
   Subsec. (d)(3). Pub. L. 90-216, Sec. 1(1), transferred counties of Brewster, Culberson, Hudspeth, and Presidio from El Paso Division to Pecos Division.
   Subsec. (d)(6). Pub. L. 90-216, Sec. 1(2), added counties of Brewster, Culberson, Hudspeth, and Presidio to Pecos Division from El Paso Division, and transferred counties of Andrews, Crane, Ector, Martin, Midland, and Upton from Pecos Division to Midland-Odessa Division.
   Subsec. (d)(7). Pub. L. 90-216, Sec. 1(3), added par. (7), which created Midland-Odessa Division, comprised of counties of Andrews, Crane, Ector, Martin, Midland, and Upton, transferred from Pecos Division.
   1964 - Subsec. (b)(1). Pub. L. 88-282, Sec. 1(a), struck out

```
     Austin, Fort Bend, and Wharton counties from list comprising
Galveston Division.
     Subsec. (b)(2). Pub. L. 88-282, Sec. 1(b), added Austin, Fort
Bend, and Wharton counties to list comprising Houston Division.
     Subsec. (c)(4). Pub. L. 88-512, Sec. 1(a), added county of
Hopkins to Paris Division.
     Subsec. (c)(5). Pub. L. 88-512, Sec. 1(b), struck out county of
Hopkins from Marshall Division.
     1961 - Subsec. (c)(5). Pub. L. 87-352 changed the name of
Division from Jefferson to Marshall, and provided for holding court
at Marshall.
     1957 - Subsec. (c)(1). Pub. L. 85-298, Sec. 2, inserted Shelby
County in list of counties comprising Tyler Division.
     Subsec. (c)(2). Pub. L. 85-298, Sec. 1, struck out Shelby County
from list of counties comprising Beaumont Division.
     1954 - Subsec. (d)(4). Act Feb. 10, 1954, Sec. 2(b)(9)(a), struck
out Edwards County from list of counties comprising San Antonio
Division of Western District.
     Subsec. (d)(5). Act Feb. 10, 1954, Sec. 2(b)(9)(b), inserted
Edwards County in list of counties comprising Del Rio Division of
Western District.
                    EFFECTIVE DATE OF 1984 AMENDMENT
     Section 407(b) of Pub. L. 98-620 provided that: ''The amendments
made by subsection (a) of this section (amending this section)
shall apply to any action commenced in the United States District
Court for the Southern District of Texas on or after the effective
date of this subtitle (Jan. 1, 1985), and shall not affect any
action pending in such court on such effective date.''
     Amendment by Pub. L. 98-620 effective Jan. 1, 1985, and not to
affect the composition, or preclude the service, of any grand or
petit jury summoned, impaneled, or actually serving on that date,
see section 411 of Pub. L. 98-620, set out as a note under section
85 of this title.
             EFFECTIVE DATE OF 1980 AMENDMENT; SAVINGS PROVISION
     Amendment by Pub. L. 96-462 effective Oct. 1, 1981, but not to
affect the composition or preclude the service of any grand or
petit juror summoned, empaneled, or actually serving in any
judicial district on Oct. 1, 1981, see section 7 of Pub. L. 96-462,
set out as a note under section 84 of this title.
```

20. **Relator would ask this Court to note that nowhere in this material is there any mention of the legislature creating this court pursuant to Article III CUSA.**

21. **Relator's search of Title 18 USC §§ 81-131 reveal that there is only one federal district court within the fifty states that has been created pursuant to Article III CUSA, and that is the United States District Court for the State of Hawaii. For the Courts benefit, Relator has copied the notes from 28 USC 91, dealing with Hawaii, and bolded the pertinent parts dealing with the creation of the court pursuant to Article III CUSA.**

SOURCE

(June 25, 1948, ch. 646, 62 Stat. 877; May 24, 1949, ch. 139, Sec. 64a, 63 Stat. 99; Pub. L. 86-3, Sec. 14(i), Mar. 18, 1959, 73 Stat. 11; Pub. L. 86-624, Sec. 19, July 12, 1960, 74 Stat. 416.)

HISTORICAL AND REVISION NOTES

Based on sections 641 and 642a of title 48, U.S.C., 1940 ed., Territories and Insular Possessions (Apr. 30, 1900, ch. 339, Sec. 86, 31 Stat. 158; Mar. 3, 1909, ch. 269, Sec. 1, 35 Stat. 838; July 9, 1921, ch. 42, Sec. 313, 42 Stat. 119; Feb. 12, 1925, ch. 220, 43 Stat. 890; Dec. 13, 1926, ch. 6, Sec. 1, 44 Stat. 919; Aug. 13, 1940, ch. 662, 54 Stat. 784).

Section consolidates parts of sections 641 and 642a of title 48, U.S.C., 1940 ed.

The provisions of section 641 of title 48, U.S.C., 1940 ed., with reference to regular and special terms and the times of holding same were omitted as covered by sections 138 and 141 of this title.

Provisions of section 642a of title 48, U.S.C., 1940 ed., relating to jurisdiction of civil actions and criminal offenses, were omitted as covered by the general jurisdictional provisions of this title and revised title 18 (H. R. 3190, 80th Cong.).

Provisions of section 642a of title 48, U.S.C., 1940 ed., as to appeals were omitted as covered by section 1295 of this title. Provisions of said section 642a with reference to juries and jury trials were omitted as covered by chapter 121 of this title.

Other provisions of section 641 of title 48, U.S.C., 1940 ed., are incorporated in sections 132 and 133 of this title.

Changes were made in phraseology.

AMENDMENTS

1960 - Pub. L. 86-624 struck out Kure Island.

1959 - Pub. L. 86-3 included Palmyra Island.

1949 - Act May 24, 1949, inserted provisions relating to inclusion of Canton and Enderbury Islands.

EFFECTIVE DATE OF 1959 AMENDMENT

Section 14 of Pub. L. 86-3 provided that the amendments of sections 91, 373, 1252, 1293, and 1294 of this title, sections 3771 and 3772 of Title 18, Crimes and Criminal Procedure, and section 644a of Title 48, Territories and Insular Possessions, the repeal of sections 536, 539, 634, 634a, and 645 of title 48, and notes set out under sections 371 and 373 of this title, are effective on admission of the State of Hawaii into the Union. See Admission of Hawaii as State note below.

CANTON AND ENDERBURY ISLANDS; SOVEREIGNTY OF KIRIBATI

By a treaty of friendship, TIAS 10777, which entered into force Sept. 23, 1983, the United States recognized the sovereignty of Kiribati over Canton Island and Enderbury Island.

ADMISSION OF HAWAII AS STATE

Admission of Hawaii into the Union was accomplished Aug. 21, 1959, on issuance of Proc. No. 3309, Aug. 21, 1959, 25 F.R. 6868, 73 Stat. c74, as required by sections 1 and 7(c) of Pub. L. 86-3, Mar. 18, 1959, 73 Stat. 4, set out as notes preceding section 491 of Title 48, Territories and Insular Possessions.

COURT OF THE UNITED STATES; DISTRICT JUDGES

Section 9(a) of Pub. L. 86-3 provided that: ''**The United States District Court for the District of Hawaii established by and existing under title 28 of the United States Code shall thence forth be a court of the United States with judicial power derived from article III, section 1, of the Constitution of the United**

**States**: Provided, however, That the terms of office of the district judges for the district of Hawaii then in office shall terminate upon the effective date of this section and the President, pursuant to sections 133 and 134 of title 28, United States Code, as amended by this Act, shall appoint, by and with the advice and consent of the Senate, two district judges for the said district who shall hold office during good behavior.''

Section 9 of Pub. L. 86-3 provided in part that subsec. (a) of that section should be effective upon the admission of the State of Hawaii into the Union.

CONTINUATION OF SUITS

Section 12 of Pub. L. 86-3 provided that: ''No writ, action, indictment, cause, or proceeding pending in any court of the Territory of Hawaii or in the United States District Court for the District of Hawaii shall abate by reason of the admission of said State into the Union, but the same shall be transferred to and proceeded with in such appropriate State courts as shall be established under the constitution of said State, or shall continue in the United States District Court for the District of Hawaii, as the nature of the case may require.  And no writ, action, indictment, cause or proceeding shall abate by reason of any change in the courts, but shall be proceeded with in the State or United States courts according to the laws thereof, respectively.  And the appropriate State courts shall be the successors of the courts of the Territory as to all cases arising within the limits embraced within the jurisdiction of such courts, respectively, with full power to proceed with the same, and award mesne or final process therein, and all the files, records, indictments, and proceedings relating to any such writ, action, indictment, cause or proceeding shall be transferred to such appropriate State courts and the same shall be proceeded with therein in due course of law.

''All civil causes of action and all criminal offenses which shall have arisen or been committed prior to the admission of said State, but as to which no writ, action, indictment or proceeding shall be pending at the date of such admission, shall be subject to prosecution in the appropriate State courts or in the United States District Court for the District of Hawaii in like manner, to the same extent, and with like right of appellate review, as if said State had been created and said State courts had been established prior to the accrual of such causes of action or the commission of such offenses.  The admission of said State shall effect no change in the substantive or criminal law governing such causes of action and criminal offenses which shall have arisen or been committed; and such of said criminal offenses as shall have been committed against the laws of the Territory shall be tried and punished by the appropriate courts of said State, and such as shall have been committed against the laws of the United States shall be tried and punished in the United States District Court for the District of Hawaii.''

APPEALS

Section 13 of Pub. L. 86-3 provided that: ''Parties shall have the same rights of appeal from and appellate review of final decisions of the United States District Court for the District of Hawaii or the Supreme Court of the Territory of Hawaii in any case finally decided prior to admission of said State into the Union, whether or not an appeal therefrom shall have been perfected prior to such admission, and the United States Court of Appeals for the

```
Ninth Circuit and the Supreme Court of the United States shall have
the same jurisdiction therein, as by law provided prior to
admission of said State into the Union, and any mandate issued
subsequent to the admission of said State shall be to the United
States District Court for the District of Hawaii or a court of the
State, as may be appropriate.  Parties shall have the same rights
of appeal from and appellate review of all orders, judgments, and
decrees of the United States District Court for the District of
Hawaii and of the Supreme Court of the State of Hawaii as successor
to the Supreme Court of the Territory of Hawaii, in any case
pending at the time of admission of said State into the Union, and
the United States Court of Appeals for the Ninth Circuit and the
Supreme Court of the United States shall have the same jurisdiction
therein, as by law provided in any case arising subsequent to the
admission of said State into the Union.''
      EXTENSION OF JURISDICTION OF UNITED STATES DISTRICT COURT FOR
    DISTRICT OF HAWAII AND OF CIVIL AND CRIMINAL LAWS TO MIDWAY, WAKE,
                       JOHNSON, SAND, ETC., ISLANDS
    The jurisdiction of the United States District Court for the
District of Hawaii and the laws of the United States relating to
civil acts or offenses consummated or committed on the high seas on
board a vessel belonging to the United States were extended to the
Midway Islands, Wake, Johnson, Sand, etc., Islands by section 644a
of Title 48, Territories and Insular Possessions.
```

22. Relator points out that even the United States District Court for the State of Hawaii, a court established pursuant to Article III of the CUSA, only has jurisdiction over federal lands within the areas outlined in its charter.

### ERROR THREE

APPLICANT IS BEING HELD IN VIOLATION OF THE SPEEDY TRAIL GUARANTEE OF THE SIXTH AMENDMENT TO THE CUSA.

23. Applicant has been held since March 9, 2003, has pled not guilty and has to date been denied trial. 18 U.S.C. 3161 places a time limit of 70 days from a plea until the date of trial. The period of incarceration awaiting trial, to this date is three times the amount of time allowed until trial begins. It is Applicant's belief that Hinojosa was arrested and indicted without sufficient evidence and the Federal prosecutors are delaying trail in an effort to secure a case against Hinojosa.

### VIII.

## SUMMARY

23. Relator has shown this court that the United States Southern District Court of Texas, McAllen Division did not have jurisdiction of the matter at trial because there was no showing that any of the acts of any of the defendants were committed or omitted within the confines of federal property.

24. Relator has further shown that Applicant, as a sovereign citizen of the State of Texas, has a right to have any federal question tried before a court that has been created pursuant to Article III of the CUSA and that the United States Southern District Court of Texas, McAllen Division was not so created, thereby barring that court from hearing the matter at hand.

25. Relator has further shown that the trial court issued orders to Applicant with which it was physically and legally impossible for him to comply.

WHEREFORE, PREMISES CONSIDERED, Reyned O. Aponte, Relator respectfully requests that this court grant the following relief:

1) Issuance, forthwith, of the Extraordinary Writ of Habeas Corpus; and

2) Authorize the issuance of a reasonable and prudent personal recognizance appearance bond pending a statutorily sufficient adjudicatory hearing on the Extraordinary Writ of Habeas Corpus; and

3) Fix a date and time certain at which a statutorily sufficient adjudicatory hearing may be held in a dispositive determination of the propriety of the present restraint upon the liberty of your Applicant, Carlos J. Hinojosa; and

4) Fix a date and time certain at which your Applicant may appear at a Deposition in which your Applicant may appear and respond to each and every question and request made of him by Plaintiff in underlying cause 7:03-CR -01010.

5) Relator, on behalf of your Applicant, requests any and all other and added relief to which he may show himself or to which he may otherwise be justly entitled at law or in equity to which the court deems to be just in this action.

Respectfully submitted this 14 day of October, 2004

*[signature]*

**Reyned O. Aponte, Relator**
c/o 2223 Ada Ln
Round Rock, Texas [78664]







Reyned Aponte
c/o 2223 Aola Ln
Round Rock, Texas (78664)

RECEIVED
NOV 01 2004

Hidalgo County Courthouse
District
County Clerk's office
ATN: Honorable State Judge
100 N. Closner Blvd
Edinburg, Texas 78539

RETURN RECEIPT REQUESTED