

98. ~~The foregoing analysis shows that although Congress has power under various provisions of the Constitution to define and prohibit as criminal, certain acts or omissions occurring anywhere in the United States, it has power also to punish for various other crimes, jurisdiction over which is retained by the States under our federal system of government, unless committed in places or areas over which legislative jurisdiction has been vested in the Federal Government." Id., at 107.~~

99.   Thus, from an abundance of case law, buttressed by this lengthy and definitive government treatise on this issue, the "jurisdiction of the United States" is carefully circumscribed and defined as a very precise portion of America. The United States is one of the 51 jurisdictions existing on this continent, excluding Canada and its provinces.

### ● FEDERAL CRIMINAL JURISDICTION

100.   It is a well established principle of law that all federal "legislation applies only within the territorial jurisdiction of the United States unless a contrary intent appears;" see Caha v. United States, 152 U.S. 211, 215, 14 S.Ct. 513 (1894); American Banana Company v. United Fruit Company, 213 U.S. 347, 357, 29 S.Ct. 511 (1909); United States v. Bowman, 260 U.S. 94, 97, 98, 43 S.Ct. 39 (1922); Blackmer v. United States, 284 U.S. 421, 437, 52 S.Ct. 252 (1932); Foley Bros. v. Filardo, 336 U.S. 281, 285, 69 S.Ct. 575 (1949); United States v. Spelar, 338 U.S. 217, 222, 70 S.Ct. 10 (1949); and United States v. First National City Bank, 321 F.2d 14, 23 (2nd Cir. 1963).

101.   And this principle of law is expressed in a number of cases from the federal appellate courts; see McKeel v. Islamic Republic of Iran, 722 F.2d 582, 589 (9th Cir. 1983) (holding the Foreign Sovereign Immunities Act as territorial); Meredith v. United States, 330 F.2d 9, 11 (9th Cir. 1964) (holding the Federal Torts Claims Act as territorial); United States v. Cotroni, 527 F.2d 708, 711 (2nd Cir. 1975) (holding federal wiretap laws as territorial); Stowe v. Devoy, 588 F.2d

S-5C

336, 341 (2nd Cir. 1978); Cleary v. United States Lines, Inc., 728 F.2d 607, 609 (3rd Cir. 1984) (holding federal age discrimination laws as territorial); Thomas v. Brown & Root, Inc., 745 F.2d 279, 281 (4th Cir. 1984) (holding same as Cleary, supra); United States v. Mitchell, 553 F.2d 996, 1002 (5th Cir. 1977) (holding marine mammals protection act as territorial); Pfeiffer v. William Wrigley, Jr., Co., 755 F.2d 554, 557 (7th Cir. 1985) (holding age discrimination laws as territorial); Airline Stewards & Stewardesses Assn. v. Northwest Airlines, Inc., 267 F.2d 170, 175 (8th Cir. 1959) (holding Railway Labor Act as territorial); Zahourek v. Arthur Young and Co., 750 F.2d 827, 829 (10th Cir. 1984) (holding age discrimination laws as territorial); Commodities Futures Trading Comm. v. Nahas, 738 F.2d 487, 493 (D.C.Cir. 1984) (holding commission's subpoena power under federal law as territorial); Reyes v. Secretary of H.E.W., 476 F.2d 910, 915 (D.C.Cir. 1973) (holding administration of Social Security Act as territorial); and Schoenbaum v. Firstbrook, 268 F.Supp. 385, 392 (S.D.N.Y. 1967) (holding securities act as territorial). This was perhaps stated best in Caha v. United States, 152 U.S., at 215, where the Supreme Court stated as follows:

102.    "The laws of Congress in respect to those matters do not extend into the territorial limits of the states, but have force only in the District of Columbia, and other places that are within the exclusive jurisdiction of the national government."

103.    But, because of statutory language, certain federal drug laws operate extra-territorially; see United States v. King, 552 F.2d 833, 851 (9th Cir. 1976). The United States has territorial jurisdiction only in Washington, D.C., the federal enclaves within the States, and in the territories and insular possessions of the United States. However, it has no territorial jurisdiction over non-federally owned areas inside the territorial jurisdiction of the States within the American Union. And this proposition of law is supported by literally hundreds of cases.

104.    As a general rule, the power of the United States to criminally prosecute is, for the most part, confined to offenses committed within "its jurisdiction". This is born out simply by examination of Title 18, U.S.C. Section 5 thereof defines the

13

term "United States" in clear jurisdictional terms. Section 7 contains the fullest statutory definition of the "jurisdiction of the United States." The U.S. District Courts have jurisdiction of offenses occurring within the "United States" pursuant to Title 18, U.S.C., Sec. 3231.

105.   Examples of this proposition are numerous. In Pothier v. Rodman, 291 F. 311 (1st Cir. 1923), the question involved whether a murder committed at Camp Lewis Military Reservation in the State of Washington was a federal crime. Here, the murder was committed more than a year before the U.S. acquired a deed for the property in question. Pothier was arrested and incarcerated in Rhode Island and filed a habeas corpus petition seeking his release on the grounds that the federal courts had no jurisdiction over an offense not committed in U.S. jurisdiction. The First Circuit agreed that there was no federal jurisdiction and ordered his release. But, on appeal to the U.S. Supreme Court, in Rodman v. Pothier, 264 U.S. 399, 44 S.Ct. 360 (1924), that Court reversed; although agreeing with the jurisdictional principles enunciated by the First Circuit, it held that only the federal court in Washington State could hear that issue. In United States v. Unzeuta, 35 F.2d 750 (8th Cir. 1929), the Eighth Circuit held that the U.S. had no jurisdiction over a murder committed in a railroad car at Fort Robinson, the state cession statute being construed as not including railroad rights-of-way.

106.   This decision was reversed in United States v. Unzeuta, 281 U.S. 138, 50 S.Ct. 284 (1930), the court holding that the U.S. did have jurisdiction over the railroad rights-of-way in Fort Robinson. In Bowen v. Johnson, 97 F.2d 860 (9th Cir. 1938), the question presented was whether jurisdiction over an offense prosecuted in federal court could be raised in a petition for habeas corpus. The denial of Bowen's petition was reversed in Bowen v. Johnston, 306 U.S. 19, 59 S.Ct. 442 (1939), the Court concluding that such a jurisdictional challenge could be raised in a habeas corpus petition. But, the Court then addressed the issue, found that the U.S. both owned the property in question and had a state legislative grant ceding jurisdiction to the United States, thus there was

jurisdiction in the United States to prosecute Bowen. But, if jurisdiction is not vested in the United States pursuant to statute, there is no jurisdiction; see Adams v. United States, 319 U.S. 312, 63 S.Ct. 1122 (1943).

107.    And the lower federal courts also require the presence of federal jurisdiction in criminal prosecutions. In Kelly v. United States, 27 F. 616 (D.Me. 1885), federal jurisdiction of a manslaughter committed at Fort Popham was upheld when it was shown that the U.S. owned the property where the offense occurred and the state had ceded jurisdiction. In United States v. Andem, 158 F. 996 (D.N.J. 1908), federal jurisdiction for a forgery offense was upheld on a showing that the United States owned the property where the offense was committed and the state had ceded jurisdiction of the property to the U.S. In United States v. Penn, 48 F. 669 (E.D.Va. 1880), since the U.S. did not have jurisdiction over Arlington National Cemetery, a federal larceny prosecution was dismissed. In United States v. Lovely, 319 F.2d 673 (4th Cir. 1963), federal jurisdiction was found to exist by U.S. ownership of the property and a state cession of jurisdiction. In United States v. Watson, 80 F.Supp. 649, 651 (E.D.Va. 1948), federal criminal charges were dismissed, the court stating as follows:

108.    "Without proof of the requisite ownership or possession of the United States, the crime has not been made out."

In Brown v. United States, 257 F. 46 (5th Cir. 1919), federal jurisdiction was upheld on the basis that the U.S. owned the post-office site where a murder was committed and the state had ceded jurisdiction; see also England v. United States, 174 F.2d 466 (5th Cir. 1949); Krull v. United States, 240 F.2d 122 (5th Cir. 1957); Hudspeth v. United States, 223 F.2d 848 (5th Cir. 1955); and Gainey v. United States, 324 F.2d 731 (5th Cir. 1963).

109.    In United States v. Townsend, 474 F.2d 209 (5th Cir. 1973), a conviction for receiving stolen property was reversed when the court reviewed the record and learned that there was absolutely no evidence disclosing that the defendant

had committed this offense within the jurisdiction of the United States. And in United States v. Benson, 495 F.2d 475, 481 (5th Cir. 1974), in finding federal jurisdiction for a robbery committed at Fort Rucker, the court stated:

110.    "It is axiomatic that the prosecution must always prove territorial jurisdiction over a crime in order to sustain a conviction therefor."

111.    In two Sixth Circuit cases, United States v. Tucker, 122 F. 518 (W.D.Ky. 1903), a case involving an assault committed at a federal dam, and United States v. Blunt, 558 F.2d 1245 (6th Cir. 1977), a case involving an assault within a federal penitentiary, jurisdiction was sustained by finding that the U.S. owned the property in question and the state involved had ceded jurisdiction. In In re Kelly, 71 F. 545 (E.D.Wis. 1895), a federal assault charge was dismissed when the court held that the state cession statute in question was not adequate to convey jurisdiction of the property in question to the United States. In United States v. Johnson, 426 F.2d 1112 (7th Cir. 1970), a case involving a federal burglary prosecution, federal jurisdiction was sustained upon the showing of U.S. ownership and cession.

112.    Cases from the Eighth and Tenth Circuits likewise require the same elements to be shown to demonstrate the presence of federal jurisdiction; see United States v. Heard, 270 F.Supp. 198 (W.D.Mo. 1967); United States v. Redstone, 488 F.2d 300 (8th Cir. 1973); United States v. Goings, 504 F.2d 809 (8th Cir. 1974) (demonstrating loss of jurisdiction); Hayes v. United States, 367 F.2d 216 (10th Cir. 1966); United States v. Carter, 430 F.2d 1278 (10th Cir. 1970); Hall v. United States, 404 F.2d 1367 (10th Cir. 1969); and United States v. Cassidy, 571 F.2d 534 (10th Cir. 1978).

114.    Of all the circuits, the Ninth Circuit has addressed jurisdictional issues more than any of the rest. In United States v. Bateman, 34 F. 86 (N.D.Cal. 1888), it was determined that the United States did not have jurisdiction to prosecute for a murder committed at the Presidio because California had never ceded

jurisdiction; see also United States v. Tully, 140 F. 899 (D.Mon. 1905). But later, California ceded jurisdiction for the Presidio to the United States, and it was held in United States v. Watkins, 22 F.2d 437 (N.D.Cal. 1927), that this enabled the U.S. to maintain a murder prosecution; see also United States v. Holt, 168 F. 141 (W.D.Wash. 1909), United States v. Lewis, 253 F. 469 (S.D.Cal. 1918), and United States v. Wurtzbarger, 276 F. 753 (D.Or. 1921). Because the U.S. owned and had a state cession of jurisdiction for Fort Douglas in Utah, it was held that the U.S. had jurisdiction for a rape prosecution in Rogers v. Squier, 157 F.2d 948 (9th Cir. 1946). But, without a cession, the U.S. has no jurisdiction; see Arizona v. Manypenny, 445 F.Supp. 1123 (D.Ariz. 1977).

115.   The above cases from the U.S. Supreme Court and federal appellate courts set forth the rule that in criminal prosecutions, the government, as the party seeking to establish the existence of federal jurisdiction, must prove U.S. ownership of the property in question and a state cession of jurisdiction. This same rule manifests itself in state cases.

116.   State courts are courts of general jurisdiction and in a state criminal prosecution, the state must only prove that the offense was committed within the state and a county thereof. If a defendant contends that only the federal government has jurisdiction over the offense, he, as proponent for the existence of federal jurisdiction, must likewise prove U.S. ownership of the property where the crime was committed and state cession of jurisdiction.

117.   Examples of the operation of this principle are numerous. In Arizona, the State has jurisdiction over federal lands in the public domain, the state not having ceded jurisdiction of that property to the U.S.; see State v. Dykes, 114 Ariz. 592, 562 P.2d 1090 (1977). In California, if it is not proved by a defendant in a state prosecution that the state has ceded jurisdiction, it is presumed the state does have jurisdiction over a criminal offense; see People v. Brown, 69 Cal. App.2d 602, 159 P.2d 686 (1945). If the cession exists, the state has no jurisdiction; see People v. Mouse, 203 Cal. 782, 265 P. 944 (1928). In Montana, the state has

jurisdiction over property if it is not proved there is a state cession of jurisdiction to the U.S.; see State ex rel Parker v. District Court, 147 Mon. 151, 410 P.2d 459 (1966); the existence of a state cession of jurisdiction to the U.S. ousts the state of jurisdiction; see State v. Tully, 31 Mont. 365, 78 P. 760 (1904). The same applies in Nevada; see State v. Mack, 23 Nev. 359, 47 P. 763 (1897), and Pendleton v. State, 734 P.2d 693 (Nev., 1987); it applies in Oregon (see State v. Chin Ping, 91 Or. 593, 176 P. 188 (1918) and State v. Aguilar, 85 Or.App. 410, 736 P.2d 620 (1987)); and in Washington (see State v. Williams, 23 Wash.App. 694, 598 P.2d 731 (1979)).

118.    In People v. Hammond, 1 Ill.2d 65, 115 N.E.2d 331 (1953), a burglary of an I.R.S. office was held to be within state jurisdiction, the court holding that the defendant was required to prove existence of federal jurisdiction by U.S. ownership of the property and state cession of jurisdiction. In two cases from Michigan, larcenies committed at U.S. post-offices which were rented were held to be within state jurisdiction; see People v. Burke, 161 Mich. 397, 126 N.W. 446 (1910) and People v. Van Dyke, 276 Mich. 32, 267 N.W. 778 (1936); see also In re Kelly, 311 Mich. 596, 19 N.W.2d 218 (1945). In Kansas City v. Garner, 430 S.W.2d 630 (Mo.App. 1968), state jurisdiction over a theft offense occurring in a federal building was upheld, and the court stated that a defendant had to show federal jurisdiction by proving U.S. ownership of the building and a cession of jurisdiction from the state to the United States. A similar holding was made for a theft at a U.S. missile site in State v. Rindall, 146 Mon. 64, 404 P.2d 327 (1965). In Pendleton v. State, 734 P.2d 693 (Nev. 1987), the state court was held to have jurisdiction over a D.U.I. committed on federal lands, the defendant having failed to show U.S. ownership and state cession of jurisdiction.

119.    In People v. Gerald, 40 Misc.2d 819, 243 N.Y.S.2d 1001 (1963), the state was held to have jurisdiction of an assault at a U.S. post-office since the defendant did not meet his burden of showing presence of federal jurisdiction; and because a defendant failed to prove title and jurisdiction in the United States

for an offense committed at a customs station, state jurisdiction was upheld in People v. Fisher, 97 A.D.2d 651, 469 N.Y.S.2d 187 (A.D. 3 Dept. 1983).

120.    The proper method of showing federal jurisdiction in state court is demonstrated by the decision in People v. Williams, 136 Misc.2d 294, 518 N.Y.S.2d 751 (1987). This rule was likewise enunciated in State v. Burger, 33 Ohio App.3d 231, 515 N.E.2d 640 (1986), in a case involving a D.U.I. offense committed on a road near a federal arsenal.

121.    In Kuerschner v. State, 493 P.2d 1402 (Okl.Cr.App. 1972), the state was held to have jurisdiction of a drug sales offense occurring at an Air Force Base, the defendant not having attempted to prove federal jurisdiction by showing title and jurisdiction of the property in question in the United States; see also Towry v. State, 540 P.2d 597 (Okl.Cr.App. 1975). Similar holdings for murders committed at U.S. post-offices were made in State v. Chin Ping, 91 Or. 593, 176 P. 188 (1918), and in United States v. Pate, 393 F.2d 44 (7th Cir., 1968). Another Oregon case, State v. Aguilar, 85 Or.App. 410, 736 P.2d 620 (1987), demonstrates this rule. And finally, in Curry v. State, 111 Tex. Cr. 264, 12 S.W.2d 796 (1928), it was held that, in the absence of proof that the state had ceded jurisdiction of a place to the United States, the state courts had jurisdiction over an offense.

## IV.    ARTICLE III COURT JURISDICTION

122.    Of the United States district courts established in the States, only the United States district court in Hawaii has been established as an Article III court and all other United States district courts in the remaining States have no Article III judicial power.

123.    No United States district court in any state may lawfully exercise Article III court power.  The lawful jurisdiction of the federal district court or courts is limited to those places where Congress has exclusive jurisdiction.  It is also clear that

federal judges and federal courts have been used in the past by the federal government to control those persons opposed to the usurpation of power by the national government. The federal courts known as United States District Courts are federal and territorial in that these courts implement administrative law on territory exclusively under the jurisdiction of the United States.

124.    United States district courts are being used by Congress primarily to prevent the rendition of law and equity in national courts by masquerading as Article III courts. These courts are incapable of achieving justice because they are not Article III courts. Generally speaking, we have a federal government that consists of a Congress of the United States, a President of the United States and district courts of the United States because there is one in Hawaii, only one in the states, and one in Washington D. C.

125.    The purpose of the Constitution was to establish and limit government to the purposes for which it was established. Unfortunately, the Congress has used very effectively the mechanisms in the Constitution to limit the third branch of the national government to the people's detriment. Congress has intentionally failed or refused to provide Article III courts in the several states.

126.    Individuals appointed to United States district courts are permitted to believe that they are Article III judges because they are appointed for life. These individuals are actually urged by the other two branches of federal government to act like Article III judges.

127.    Article III judicial power imposes self-restraint on judges. Only judges appointed to Article III courts may exercise the judicial power of the United States found in Article III, Section 2. Judicial power imposes restraints on the judges that have it and that serves as some protection from judicial abuse. All justices appointed to the Supreme Court of the United States are genuine Article III judges.

128.   The judges of other than judicial courts, of course, have no constitutional judicial power so they tend to be extremely rigid in the way they administer their "judicial business."   These judges are or can be called territorial, legislative or administrative.  The rigidity of the non-judicial court is the result of the tight rein that the Congress maintains over the personnel and business of non-Article III courts to solely achieve congressional purposes.

129.   The Constitution is a limitation on Congress.  The Constitution grants to Congress power to create courts by exercising three different powers.  At various times in the history of this country Congress has created courts using these various powers under Article I, Article III and Article IV of the Constitution:

1.              The Congress shall have power...To constitute Tribunals inferior to the supreme Court;

2.              The judicial power of the United States, shall be vested in one supreme court, and such inferior Courts as the Congress may from time to time ordain and establish.

3.              The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States;

130.   Article III courts would also be limited to a territorial jurisdiction.  Based on examination of the statute law that created the various territorial United States district courts throughout the several states, Article III courts would also be of limited federal territorial jurisdiction.

131.    There should be no confusion as to the difference between Article III courts and those courts that are not Article III courts. Article III district courts are not territorially different from the tribunals that Congress may constitute pursuant to Article I inferior to the supreme court. Federal courts do not extend their judicial districts beyond federal territory. Article III courts are "territorial courts" that may exercise the judicial power of the United States—Article I and IV courts have no such power.

132.    Congress has established Article III district courts in Hawaii and the District of Columbia. The 2 district courts of the United States that were ultimately pronounced ordained and established by Congress pursuant to Article III of the Constitution are the only ones that can exercise the judicial power of the national government.

133.    Because Congress can make law locally or nationally, it must be presumed that law enacted by Congress is territorial in scope rather than national, *Foley Bros. Inc. v. Filardo* 336 U.S. 281(1949), unless a contrary intent is shown in the legislation itself. The legislation creating the district court for Hawaii is a clear example of the presumption and an example of a national legislative intent to create an Article III court.

134.    Combining the district court for Puerto Rico with the other United States District Courts identifies them all as territorial. The federal district courts are found in Title 28 U.S.C. Judiciary and Judicial Procedure, in the sections numbered from 81 to 131. Title 28 U.S.C. was enacted into positive law in 1948. The district courts were found in Chapter 5 just as they are today. The districts themselves had not changed from 1911 when they were described as the territory that existed on July 1, 1910. The territory was, for example, the "State of California" which then and now consists of the federal territory within California.

135.    Puerto Rico is not a state of the Union. Its inclusion in Chapter 5 and appearance in §119 identifies the "states" in the sections of Chapter 5 as mere



28
n s c     go T P 9
               33

37

labels for the areas of federal territory. The Commonwealth of Puerto Rico includes the federal territory under the jurisdiction of the United States. Included, for example, in the "State of California" is the territory of the United States located in the California Republic. Use of the "State of California" facilitates the use of federal law to create a California personal income tax. State of California denotes those special federal places where the United States has jurisdiction.

136.    Congress established the only Article III court for a state of the Union in Hawaii. Hawaii appears in §91 as the only Article III court but that court is qualified as to the way judges are to be appointed to that court. That qualification precludes the exercise of Article III judicial power by any judge appointed to that court. Under the heading for § 91 Hawaii, "Court of the United States; District Judges," will found, Section 9 (a) of Pub. L. 86-3 which provides that:

137.    "The United States District Court for the District of Hawaii established by and existing under Title 28 of the United States Code shall thence forth be a court of the United States with judicial power derived from article III, of the Constitution of the United States: Provided, however, that the terms of office of the district judges for the district of Hawaii then in office shall terminate upon the effective date of this section and the President, pursuant to sections 133 and 134 of Title 28, United States Code, as amended by this Act, shall appoint, by and with the advice and consent of the Senate, two district judges for the said district who shall hold office during good behavior."

138.    All of Title 28 U.S.C. provides for the territorial government of the United States and nothing of Article III can be put back into it without destroying the entire Title 28 U.S.C. as positive law. In other words, there may be a present belief by all of the state and federal judiciary, all the legal academic community and all the local, state and federal government officials that the United States district courts for the 50 states of the Union are Article III courts, but they are wrong.

139. Congress prevented the ordination of the Article III it established for Hawaii by denying the court full Article III judges. Congress took a territorial court established by and existing under Title 28 and created an Article III district court for Hawaii. It must be noted that the territorial jurisdiction did not change—only the description of the court.

140. Congress has provided that territorial Title 28 U.S.C. judges be appointed to the United States district court for the district of Hawaii are to be appointed to an Article III court. The district judges for the district of Hawaii are specifically to be appointed by the President pursuant to sections 133 and 134 of title 28, United States Code, as officers of the United States but not as judges of an Article III court. These two sections are also to be used in appointing any of 7 judges of the Puerto Rico district should a vacancy occur there. It can be deduced that appointment pursuant to § § 133 and 134 of Title 28, will always produce territorial judges.

141. The Hawaii judicial district established in § 91 of the Judicial Code of 1948 was a territorial court. Section 9 (a) above clearly indicates that prior to the admission to statehood, the United States District Court of Hawaii was not a true United States court established under Article III of the Constitution, to administer the judicial power of the United States, *Balzac v. Porto Rico*, 258 U.S. 298, 312 (1922). In *Balzac*, Chief Justice William Howard Taft stated that United States District Court for Arecibo, Porto Rico, as Puerto Rico was known then, "created by virtue of the sovereign congressional faculty, granted under Article IV, § 3, of that instrument, of making all needful rules and regulations respecting the territory belonging to the United States."

142. Puerto Rico is the Commonwealth of Puerto Rico and it has not been incorporated into the United States though its inhabitants are United States citizens. The inclusion of Puerto Rico in Chapter 5 as § 119 does not make the

district court for Puerto Rico an Article III court because Puerto Rico has not
been incorporated into the Union. Puerto Rico fits comfortably among the names
of the 50 states because the geographical areas are mini federal territories or
federal enclaves.

143. United States Government people are required to obey the United States
Code; it is their duty to obey that law. The government's law requires the total
obedience of government's officers and employees.

144. Citizens are not part of government and they are not its subjects. Citizens
can impose upon only themselves certain legal duties, if they want. There is only
one duty that citizens have that indirectly protects the government. In the words
of the Declaration of Independence, "Governments are instituted among men" to
secure God given rights.

145. Only Hawaii has an Article III district court and that court cannot function
as one. No other state has an Article III court. The federal district courts of
California fall squarely within the mold of the federal courts of the 49 states that
have no Article III district courts. Examination of copies of all the Statute Laws
described in the annotations to all the Chapter 5 sections of Title 28 that
establish district courts in the states and Hawaii reveals that Hawaii has the only
Article III district court.

146. The use of the term, "district courts of the United States" refers to Article III
courts. There are no more than two "district courts of the United States." There
is no doubt that the district court for Hawaii is an Article III court—that's one. The
§ 88 court for the District of Columbia is another. The Historical and Revision
Notes to that section makes it clear that the District of Columbia district court is a
constitutional court established and ordained under Article III. The existence of
at least two "district courts of the United States" permits the general usage of
language that refers to the "district courts of the United States" as Article III
courts.

147.   State courts that were already established when the Constitution was ratified were duty bound to obey the Constitution and the laws enacted pursuant to it.  Reference to the Judiciary Act of 1789 clarified and substantiated that no Article III district courts had been created in the several states pursuant to that law.

148.   The federal trial courts during the period of the Judiciary Act of 1789 were manned by two United States Supreme Court justices riding circuit and the district judge for the district.  Districts were created for territories that by the date of enactment, September 24, 1789 had not yet ratified the Constitution because, of course, they were not states.   North Carolina did not ratify the Constitution until after enactment of the Judiciary Act of 1789.  District courts created under that act could not have been created under Article III.

149.   Non-judicial, legislative, administrative and territorial courts are incapable of exercising the judicial power of the United States, which can only be found in an Article III court.  Article III of the Constitution has expressly granted to Congress the power to vest courts inferior to the Supreme Court with the judicial power of the United States.  The Constitution does not prohibit the creation of federal courts outside of Article III.  It follows, therefore, that at the very least Congress must invoke the authority of Article III in creating Article III courts just so one court can be distinguished from another.

150.   The evidence that exists to show that the federal district courts are ordained and established pursuant to Article III is anecdotal or circumstantial.  The Constitution provides that Congress shall vest the judicial power of the United States in "such inferior Courts as the Congress may from time to time ordain and establish."  That same language was used in the Preamble to the Constitution to "ordain and establish this Constitution for the United States of

America." There can be no question that the Congress has established but not ordained an Article III in Hawaii and in no other states.

151.    Legal scholars assume without justification that the federal district courts are Article III courts. In all the legal literature examined, status of the United States district courts as Article III was assumed despite all the contrary authoritative evidence. The United States Supreme Court in two cases: *Balzac v. Porto Rico*, 258 U.S. 298 (1921) and *Mookini v. United States*, 303 U.S. 201 (1938) made it clear that a "district court of the United States" described a court created under Article III and a "United States district court" described a territorial court. The former identified a constitutional court of the United States exercising the judicial power of the United States and the latter merely identified a court for a district of the government of the United States.

## V.  Grand Jury Used

152.    Grand and petit jurors determine if they are citizens of the United States and whether they have resided in judicial district for a year. In 1968 Congress enacted the Jury Selection and Service Act that uses the nation's voter registration system as the basis for jury selection in the federal courts.

153.    Examination of available jury selection plans the district courts have created and that have been approved by the federal courts of appeal reveal no knowledge of the true territorial composition of the United States district courts. The jury questionnaire in common use merely asks an applicant a half dozen questions beginning with, if he or she is a citizen of the United States and a resident of the judicial district for at least a year.

154.    Very few Americans can prove that they are, indeed, citizens of the United States and practically no one understands that the Sixth Amendment requires that territorial composition be established prior to trial. For all of the states, district court vicinage is the federal territory within the counties that comprise the district. This is the only vicinage that satisfies the 6th Amendment command that



the "district shall have been previously ascertained by law." An individual juror's impression of what constitutes the judicial district does not satisfy the Constitution.

155. All trial courts must have districts which shall have been previously ascertained by law. Venue and vicinage are being confused because an erroneous assumption is being universally made that the federal district courts are Article III courts and federal judges are Article III judges. Vicinage corresponds to territorial composition and describes where jurors come from.

156. The areas from where Article III court jurors are to be drawn is the same as the territorial composition of the federal court from the federal territory within a district comprised of named counties but they are being drawn from outside the federal territory. Any grand and petit juror that resides outside a federal territory does not reside within the district and can successfully be challenged as unqualified.

157. A federal territorial court without Article III power cannot be conferred such power by the litigants. One United States district court cannot legitimately serve both local federal and national interests. The interests of the two courts are almost completely mutually exclusive. Territorial courts without judicial power tenaciously serve the need of Congress to administer government law. These courts only have the jurisdiction conferred on them by Congress and they guard that jurisdiction to the exclusion of all other judicial concepts.

158. All the United States district courts in 49 of the several states are other than Article III courts. There is no evidence that the United States district courts for any state other than Hawaii is ordained and established pursuant to Article III, Section 1; therefore, they are not vested with the judicial power of the United States. Article III has not been invoked by Congress in creating any other state's federal district courts and the 1911 Judiciary Act specifically creates those federal courts from the territory of the United States.

18